CASE OF ELBRIDGE G. FULLER, PETITIONER.

It is not the duty of a town clerk to record anything more than what is declared by the selectmen to be a vote.

Where a seat was claimed by one not returned a member, and it was proved, that he had offered to treat the voters, and authorized others to do so, previous to the election, the house declined acting in any manner on the petition.

This was a petition of Elbridge G. Fuller, setting forth that he was duly elected a member of the house from the town of Holland, and praying that he might be admitted as such.

The committee on elections, to whom the petition was referred, reported thereon as follows :—

" The depositions of nearly every qualified voter in the town of Holland were submitted to the committee, and in many instances two depositions were offered from the same individ-

[1] 60 J. H. 192, 104.          [2] Same, 111.

ual; besides which, many witnesses were present and were examined in person.

The petitioner, being called upon to produce the record of the town-meeting, did so; from which it appeared, that the town first voted to send a representative to the general court; then voted to reconsider their vote, and voted not to send, and then dissolved the meeting.

The selectmen contended, that the petitioner could not go behind this record, and show that any other vote was passed. But the committee were of opinion, that the clerk was only obliged to record whatever the selectmen declared to be a vote, and the whole ground of the petitioner's claim being, that the selectmen had refused to declare a result of the first ballot to be a vote, when it really was one,—further evidence was admitted.

The corrected list of voters used on the day of election was before the committee, and contained (as was agreed) one hundred and five names. It was satisfactorily proved by Mr. Fuller the petitioner, that twenty-four of these voters were absent at the first ballot,—reducing the number of voters present at that ballot to eighty-one. This fact was not disputed. Mr. Fuller contended before the committee, that the result of the first ballot was:—whole number of ballots, 78; for Elbridge G. Fuller, 41; Ezra Allen, 30; scattering, 7. The selectmen contended that the result was:—whole number of ballots, 85; for Elbridge G. Fuller, 41; Ezra Allen, 37; scattering, 7.

The committee observe, that by the last calculation there were four more votes than the number of voters present; besides, the selectmen could produce the names of but thirty-six who might by any possibility have voted for Allen; and farther that there are forty-one, about whom depositions were exhibited tending strongly to prove that they did vote for Fuller.

There was evidence that after the hat was turned, at the first ballot, the votes were sorted and counted. All the testimony agrees that Mr. Fuller's pile of votes was forty-one, and

that the scattering pile contained seven.  Of the other pile there is positive testimony that it contained thirty-seven votes, and as positive that it contained only thirty.  One statement sworn to by a very credible witness is, that a person counted Mr. Allen's votes and made twenty-nine,—that some one observed 'there is one under your hand,' he raised his hand, found one, and said 'that makes the thirty.'

The committee think it possible that the mistake may have arisen from some one, in attempting to return the two piles using these words, 'thirty—seven'—and then adding by explanation, 'seven scattering.'

The town clerk had minuted the numbers forty-one and seven, but before minuting a return of Allen's votes, the chairman of the selectmen had separated Fuller's votes into three piles, one for ' Elbridge G. Fuller,' one for ' E. G. Fuller,' and one for ' E. G. Fuller, Esq.'   One of the votes for E. G. Fuller, was shown to the clerk, and an inquiry made whether it was a legal vote.   The clerk answered that he did not know what was the law in this state, but it would not be so in Connecticut.   The chairman then said, 'there are some votes for Elbridge G. Fuller, some for E. G. Fuller, and some for E. G. Fuller, Esq., I do not know what to do with them, and they must bring in their votes again, with the name written in full.' Another of the selectmen said to him, 'you are too fast, you have not yet declared there is no choice.'   He then announced that there was no choice.

On the second attempt to ballot, it was announced that one man had put in two ballots, and the balloting was stopped, and a new one was commenced.   The person, who was supposed to have put in two votes, was a Mr. Benjamin Franklin, one of Mr. Fuller's friends.   But he was proved to be an aged and conscientious man, and the mistake was observed and immediately made public by a Mr. Partridge, another of Mr. Fuller's friends.

On the third and fourth attempts there was no choice; and then the meeting was adjourned to meet in the evening and vote for governor.

The votes stood :—

|  | Fuller. | Allen. | Scattering. |
|---|---|---|---|
| 1st ballot, | 41 | 37 or 30 | 7 |
| 2nd ballot, | 39 | 37 | 5 |
| 3d ballot, | 41 | 37 | 4 |

There was evidence that several voters changed their candidate on the second ballot.

The votes for governor in the evening stood as follows :— for Morton, 44; for Everett, 40; for W. Weld, 1.

The one for Weld, (who is one of the selectmen,) was thrown by Mr. Fuller.

Mr. Fuller at an early day demanded a certificate from the selectmen.

The above is a statement of all the testimony deemed by the commitee to be of any great importance. There was some additional testimony tending to impeach adverse testimony, but it was not considered very important. All the depositions are on file, and are accessible to every member of the house, who may desire to investigate them.

The committee are unanimously of opinion, that the following facts were proved or agreed :— whole number of voters in the town, 105; proved absent on 1st ballot, 24; leaving voters present on 1st ballot, 81. If they had all voted, the number necessary for a choice would have been 41.

Elbridge G. Fuller had that number, and should have been declared the member elect.

There was some testimony tending to show that there were offers to treat voters, made by the partisans of both candidates, but the committee did not think it of sufficient consequence to vary the result. There is no law against treating at elections.

The committee therefore recommend, that Elbridge G. Fuller be declared the member elect from Holland, and that he be duly qualified to take a seat in this house."

A minority of the committee on elections, concurring with the majority, in reference to all the facts stated in their report, presented their views in a counter report, accompanied by

47

several depositions, which were in the case, and not contradicted.

The depositions were as follows:—

### DEPOSITION OF REUBEN STEVENS.

I, Reuben Stevens, testify and say, that Fuller never did authorize me to offer rum, but he (Fuller) stated this: that if he was elected, he should treat; tnat he requested me to state that, "if he was elected, he should treat; the town-meeting was so early in the day, he should find some crackers and cheese, or bread and cheese, or something like that." I stated to others as Fuller stated to me, and I presume I stated to some, if Fuller would not treat, I would.

Question by Linus Child, (counsel for Fuller.)

Did Fuller ever authorize you to say in his behalf to any one, if he would vote for him, that he (Fuller) would treat him or furnish him anything to eat?

Answer. No, sir.

Question by same. Did Fuller ever request you to say to any one, that if he was elected, he would treat or furnish anything to eat?

Answer. I don't recollect that he did.

Question by same. Was what was said by you to voters, said upon your own responsibility, and not at the request of Fuller?

Answer. On my own responsibility.

Question by same. How long have you been a voter in Holland?

Answer. Twenty-nine years.

Question by same. Has it always been the custom for persons elected as representatives, to treat after their election?

Answer. It has till within a few years.

Question by same. Have not the representatives elected in Holland always treated?

Answer. I recollect of only one instance in which it was not.

Question by selectmen of Holland. About how long before the November meeting did Fuller tell you, that if he was elected, he would treat?

Answer. I cannot certainly tell. Should think about two or three weeks.

Question by the same. Did Fuller, at the time of the above conversation, or at any other time, intimate to you a wish that you would endeavor to procure his election?

Answer. I had some conversation with Fuller on the subject, and I stated to him, that I thought I knew of some that would vote for him, and that I should use my endeavors to procure his election, if he would consent to be a candidate.

Question by the same. What did Mr. Fuller say in reply to the above statement made by you?

Answer. He consented to stand as a candidate.

Question by the same. Did he also express his consent that you should use your endeavors to procure his election?

Answer. I think he did.

Question by the same. Was this conversation before or after his assurance that he would treat if elected?

Answer. I don't know whether it was at that time or after.

Question by the same. Did you make known the statement of Mr. Fuller, that he would treat if elected, to the voters; if so, to how many?

Answer. I made known that statement to a considerable number, but don't know how many.

Question by the same. Had you ascertained who and how many would vote for Mr. Fuller, and did you state the result of your inquiries to Mr. Dixon, before the election?

Answer. I think I did, and I told him I thought he would have a majority.

## DEPOSITION OF REUBEN UNDERWOOD.

I, Reuben Underwood, testify and say, that about a week before town-meeting, held on the 13th instant, for representative, Mr. Fuller asked me, who I was going to vote for for representative. I told him I did not know, but thought I should vote for Capt. Freeland Wallis. He asked, what made me vote for them cold water men; he said he would not vote for them, but would vote for somebody that would treat. I told him I did not know who would treat; he said there were enough of them that would; he said if they would vote for him, and he went, he would treat them all; they should not go dry, he would give them all they would drink. I answered, I guess I shall vote for you.

Question by L. Child. Did you vote for Fuller?

Answer. I did not.

Question by same. Was the conversation a jesting and romantic one?

Answer. I don't know but it was a laughing talk; my opinion is, I thought he wanted me to vote for him.

Question by same. Were you in earnest or jest when you said, "I guess I shall vote for you then?"

Answer. I guess I was in earnest; no, I was in romance then.

## DEPOSITION OF ELISHA KINNEY.

I, Elisha Kinney, testify and say, that I am an inn-holder in the town of Holland, and on the 13th day of November last, the day of election, after the meeting was adjourned from the meeting-house to the tavern, Fuller told me to give the people something to drink. I asked him if he wanted I should treat any only those who voted for him; and he said, yes, you treat all who would drink at his expense. I asked him, if I should let them have all they would to drink, and he said not; let them have only one glass apiece, and that I might take their names down, so as to know that they had had a glass. I should think there were something like forty glasses drank on Fuller's expense, for which he paid me.

Question by selectmen. Did Fuller, at or before the said town meeting, order liquor to be furnished to the voters of Holland, or pay for liquor so furnished, and if so, when, and to what amount?

Answer. He did not, except what I have stated, after the election was over.

Question by the same. Was proclamation made by you, or by any one else to your knowledge, that all the voters could have a drink on Mr. Fuller's account?

Answer. I spoke to all that were in hearing, that all who would drink on Fuller's expense, could be furnished with one glass each.

Question by L. Child. Were all that drank at Fuller's expense of one party?

Answer. I cannot tell. I should think not.

Question by selectmen. Do you know that any drank on Mr. Fuller's account, besides such as voted for him?

*Answer.* I do not know who voted for Fuller, nor who voted on the other side.

There was also the deposition of Elisha Willis, testifying that Reuben Stevens told him that Fuller would give him as much as he could eat and drink, if he would vote for him.

There was verbal testimony before the committee, that a minor, the son of Col. Allen, offered one individual a glass, if he would vote for his father; and that a Mr. Drake offered a voter the same inducement to vote for the same gentleman. Neither of these acts was proved to have been authorized by or known to Col. Allen, the candidate.

The minority concluded their report as follows:—

" The minority believe that it is the duty of a petitioner, who comes to claim a seat in this house, to come with clean, pure and unsullied hands. They think that the above detailed testimony, which is entirely uncontradicted, clearly shows that the judgment of the voters, in exercising their electoral franchise, had been tampered with by the candidate, and that he offered an inducement,—a bribe, (no matter how paltry or contemptible that bribe may have been,)—to secure the favor and votes of the legal voters of Holland. They prove that he not only offered the bribe, but authorized others to offer it, and in the end paid it.

Believing that the constitution gives us the power to judge of the legality of the election of every gentleman returned as a member of this house; believing that the election of Mr. Fuller, (if obtained at all,) was obtained by illegal means,— by means tending to prostrate the benefits of our right of suffrage, to lessen the sanctity, the holy purity of the ballot box, and eventually (if persevered in and sanctioned) to destroy all confidence in a republican and elective form of government; the minority recommend that the petitioner have leave to withdraw his petition."

The report (of the majority) was rejected, after debate, by a vote of 151 to 189; the question being stated on agreeing thereto; and a motion to reconsider, afterwards made, was also rejected by a vote of 117 to 217.[1]

[1] 60 J. H. 144, 168, 172, 177, 184.